## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| JA SOLAR INTERNATIONAL LIMITED,<br>JA SOLAR USA INC.,<br><br>       Plaintiffs,<br><br>   v.<br><br>UNITED STATES,<br><br>       Defendant. | )<br>)<br>)<br>)<br>)<br>) **Ct. No. 21-00514**<br>) **Nonconfidential Version**<br>)<br>)<br>)<br>)<br>) |

## **COMPLAINT**

Plaintiffs JA Solar International Limited, a foreign exporter of subject merchandise, and JA Solar USA Inc., an importer of subject merchandise (collectively, "JA Solar"), by and through their counsel, allege as follows:

### I. PROCEEDING UNDER REVIEW

1. This action seeks judicial review of certain aspects of the Final Results of the fifth administrative review of the antidumping duty ("AD") order on certain crystalline silicon photovoltaic product from Taiwan by the U.S. Department of Commerce ("Commerce"). See Certain Crystalline Silicon Photovoltaic Products From Taiwan: Final Results of Antidumping Duty Administrative Review; Partial Rescission of Antidumping Duty Administrative Review; Final Determination of No Shipments; 2019-2020, 86 Fed. Reg. 49,509 (Dep't Commerce Sept. 3, 2021) ("Final Results"), and accompanying Issues and Dec. Mem. ("Final I&D Mem."). The review in question covers entries of certain crystalline silicon photovoltaic product ("solar products") covering the period of review ("POR") from February 1, 2019, through January 31, 2020.

## II.   JURISDICTION AND STANDARD OF REVIEW

2. JA Solar brings this action pursuant to the Tariff Act of 1930, as amended (the "Act"), sections 516A(a)(2)(A)(i)(I) and 516A(a)(2)(B)(iii), 19 U.S.C. § 1516a(a)(2)(A)(i)(I); (B)(iii) (2018).

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1581(c) and sections 516A(a)(2)(A)(i)(I), (B)(iii) of the Act, 19 U.S.C. § 1516a(a)(2)(A)(i)(I), (B)(iii).

4. The standard of review, as set forth in section 516A(b)(1)(B)(i) of the Act, 19 U.S.C. § 1516a(b)(1)(B)(i), is whether the determinations, findings or conclusions of Commerce were "unsupported by substantial evidence on the record, or otherwise not in accordance with law."

## III.   STANDING

5. JA Solar, collectively, consists of a foreign exporter and domestic importer of the subject merchandise who participated in the underlying review by submitting rebuttal or clarifying information as well as a case brief. JA Solar is, therefore, an "interested part{y}" within the meaning of sections 771(9)(A) and 516A(f)(3) of the Act, 19 U.S.C. § 1677(9)(A) and 1516a(f)(3).

6. Accordingly, JA Solar has standing to commence this action pursuant to 28 U.S.C. § 2631(c).

## IV.   TIMELINESS OF THIS ACTION

7. On September 3, 2021, Commerce published the Final Results in the Federal Register.

8. JA Solar filed a summons concurrently with this complaint, within 30 days of the publication in the Federal Register of the Final Results.

9. Thus, JA Solar's summons and complaint are timely filed pursuant to 19 U.S.C. §§ 1516a(a)(2)(A)(i) and (B)(iii) and USCIT R. 3(a)(2), 6(a).

## V.     STATEMENT OF FACTS

10. Commerce initiated the AD investigation of solar products from Taiwan on January 22, 2014, following the filing of the petition on December 31, 2013. See <u>Certain Crystalline Silicon Photovoltaic Products From the People's Republic of China and Taiwan: Initiation of Antidumping Duty Investigations</u>, 76 Fed. Reg. 70,966 (Dep't Commerce Jan. 29, 2014). The International Trade Commission (the "Commission") simultaneously conducted its investigation. <u>See</u> <u>Crystalline Silicon Photovoltaic Cells and Modules From China; Institution of Antidumping and CVD Investigations and Scheduling of Preliminary Phase Investigations</u>, 79 Fed. Reg. 1,389 (Int'l Trade Comm'n Dec. 31, 2013).

11. On February 18, 2015, Commerce issued an AD order on solar products from China following an affirmative countervailing duty determination and an affirmative injury determination by the Commission. <u>See</u> <u>Certain Crystalline Silicon Photovoltaic Products From Taiwan: Preliminary Results; Preliminary Intent To Rescind and Partial Rescission of Antidumping Duty Administrative Review; and Preliminary Determination of No Shipments; 2019–2020</u>, 86 Fed. Reg. 22,630, 22,632 (Dep't Commerce Apr. 29, 2021), and accompanying Dec. Mem. at 1 ("Prelim. Dec. Mem.").

12. Throughout March 2020, certain interested parties requested that Commerce conduct an administrative review of the AD order on solar products from Taiwan. <u>See</u> Prelim. I&D Mem. at 2. Based on these requests for an administrative review, Commerce initiated the fifth administrative review on April 8, 2020, covering the POR from February 1, 2019, through January 31, 2020. <u>See</u> <u>id.</u> at 1-2.

13. As part of its administrative review proceeding, Commerce selected two mandatory respondents: (1) Inventec Solar Energy Corporation (ISEC) and E-TON Solar Tech. Co., Ltd. (ETON) (collective, "ISEC/E-TON") and (2) United Renewable Energy Co., Ltd. ("URE"). See id. at 3.

14. From September 2020 through April 2021, Commerce received timely responses from ISEC and URE to its AD questionnaire and supplemental questionnaires. See Prelim. I&D Mem. at 3.

15. In its response to Section A of Commerce's AD questionnaire, ISEC reported that it had sales to [ ▮ ] where it was directed by its customer to "ship the solar cells to producers of modules in a third country." Prelim. Dec. Mem. at 13. ISEC maintained that it considers these sales to be reportable U.S. EP sales because it had "knowledge, at or prior to the time of sale, based on email communications or other sales documentation that such sales are destined for the United States after being assembled into solar modules." See id.

16. Commerce issued a supplemental questionnaire to ISEC requesting clarification of certain language in the sales contract between ISEC and [ ▮ ] as well as asking for additional supporting evidence from ISEC that it had knowledge that its sales to [ ▮ ] were destined for the United States. See Final I&D Mem. at Cmt. 2. In response, ISEC submitted WeChat communications between itself and [ ▮ ] demonstrating that both parties had knowledge of the ultimate U.S. destination of ISEC's solar cells after they were assembled into modules in an intermediary third-country. See id. Additionally, ISEC provided affidavits from itself and [ ▮ ] as well as purchase orders attached to emails from [ ▮ ] establishing that both parties were aware that the ultimate destination for ISEC's solar cells was the United States. See id.

17.     On April 6, 2020, [          ] submitted clarifying factual information on the record demonstrating the "full traceability for the solar cells from ISEC's production facility to the U.S. and proof that every sale from ISEC to { [          ] } during the POR was a sale to the U.S. market." Id. Specifically, [

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████ ].

18.     On April 23, 2021, Commerce issued its Preliminary Results and assigned ISEC a preliminary dumping margin of 32.54 percent. Prelim. Results, 86 Fed. Reg. at 22,632. In the Preliminary Results, Commerce excluded ISEC's sales of solar cells to [          ] that were assembled into solar modules an intermediary third-country prior to importation into the United States from its dumping margin calculation. See Prelim Dec. Mem. at 14. Despite significant record evidence to the contrary, Commerce summarily determined that ISEC did not possess knowledge of the ultimate destination of its merchandise because ISEC "expressed uncertainty regarding the ultimate destination of the merchandise at the time of the sales at issue, despite the information that it received from its customer regarding the intended destination." Id. Commerce, therefore did not include these sales to [          ] in ISEC's entity margin calculation. See id.

19.     On June 8, 2021, JA Solar submitted a case brief for Commerce's consideration prior to issuing the Final Results. See Final I&D Mem. at 3. JA Solar argued that Commerce wrongfully excluded sales from ISEC to [ ▮ ] that were then sent to an intermediary third-country for further processing before eventual sale to the United States. See Final I&D Mem. at Cmt. 2. JA Solar noted that no independent parties submitted any information to rebut, clarify or correct ISEC's claim. See id. Further, JA Solar maintained that Commerce failed to find any deficiencies in ISEC's responses to Commerce's requests, nor did Commerce provide ISEC with an opportunity to clarify the information it submitted in its AD questionnaire and supplemental questionnaire responses in support of its claim that it had knowledge of the U.S. destinations for its solar cells at the time of sales. See id. [ ▮ ] contended that once Commerce engaged with the record, there was only one reasonable conclusion– that ISEC had knowledge, exceeding Commerce's threshold of both "knowing" and "having reason to know" (i.e, having constructive knowledge), that its sales to [ ▮ ] were ultimately destined for the United States. See id. Any uncertainty concerning the boilerplate sales contract, according to JA Solar, was superseded by the admission by ISEC that it had knowledge of the ultimate destination of its sales to [ ▮ ], a claim it then supported with significant evidence.

20.     On September 3, 2020, Commerce published the Final Results, calculating a dumping margin of 21.87 percent for ISEC. Final Results, 86 Fed. Reg. at 49,511.

21.     In the Final Results, Commerce continued to exclude ISEC's sales to [ ▮ ] from its dumping margin calculation. See Final I&D Mem. at Cmt. 2. Commerce acknowledged that [ ▮ ] sold the solar modules assembled using ISEC's solar cells to the United States, but nonetheless found "that the record lacks documentary support for ISEC's claim that it had knowledge at the time of sale to {its} customer, that {its solar cells} were destined for the United

States." See id. Commerce set forth that it applied its "knowledge test" to determine the first party in a supply chain that had knowledge of the U.S. destination. See id. Under its knowledge test, Commerce "considers both a seller's actual knowledge (knew) and imputed knowledge (should have known) of the final destination of the subject merchandise at the time of sale." Id. Commerce maintained that its practice is to analyze "documentary or physical evidence" as that "type of evidence is more probative, reliable and verifiable than statements or declarations." Id. Commerce concluded that "{t}he essential facts are clear on the record, and these facts do not support ISEC's contention that it actually knew, or should have known, that the U.S. was the ultimate destination of the merchandise at issue" and "the first party that did have such unambiguous knowledge was {[ ▮ ]}." Id. Ignoring substantial record evidence to the contrary, Commerce continued to find that "the contract terms agreed upon by {the} parties deliberately left ambiguous the ultimate destination of the merchandise." Id.

## VI.     STATEMENT OF THE CLAIMS

### COUNT I

22.     JA Solar herein incorporates by reference paragraphs 1 through 21, supra, of this complaint.

23.     Commerce's decision to exclude ISEC's sales of solar cells to [ ▮ ] that were assembled into solar modules in an intermediary third-country prior to importation into the United States from its dumping margin calculation was unsupported by substantial evidence and otherwise not in accordance with law because Commerce misapplied the statute, ignored copious record evidence demonstrating ISEC's knowledge of the ultimate destination of its solar cells at the time of the sale and contradicted its own standard practice with respect to the knowledge test.

NONCONFIDENTIAL DOCUMENT
CONFIDENTIAL INFORMATION REMOVED

## DEMAND FOR JUDGMENT AND PRAYER FOR RELIEF

WHEREFORE, and as challenged herein, JA Solar respectfully prays that this Court:

(1) find that Commerce's action as described in Count I was unsupported by substantial evidence and otherwise not in accordance with law;

(2) order Commerce to include ISEC's sales of solar cells to [        ] that were assembled into solar modules in an intermediary third-country prior to importation into the United Sates in Commerce's dumping margin calculation as set forth in Count I;

(3) order Commerce to recalculate the dumping margin assigned to ISEC in the administrative review by correcting the error set forth in Count I, including an importer-specific rate for [           ];

(4) order Commerce to publish amended Final Results in the Federal Register in accordance with a final decision by this Court in this matter;

(5) order Commerce to issue liquidation instructions to U.S. Customs and Border Protection consistent with this Court's decision; and

(6) provide such other relief as this honorable Court deems proper.

Respectfully submitted,

Date: <u>September 15, 2021</u>

/s/ Jeffrey S. Grimson
Jeffrey S. Grimson
Bryan P. Cenko
Mowry & Grimson, PLLC
5335 Wisconsin Avenue NW, Suite 810
Washington, DC 20015
202-688-3610 (phone)
trade@mowrygrimson.com
*Counsel to JA Solar*