Slip Op. 22-146

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| JA SOLAR INTERNATIONAL LIMITED, and JA SOLAR USA INC., <br><br>        Plaintiffs, <br><br>v. <br><br>UNITED STATES, <br><br>        Defendant. | Before: Leo M. Gordon, Judge <br><br> Court No. 21-00514 |

**OPINION**

[Remanding Commerce's Final Results for further explanation and reconsideration of the application of its knowledge test.]

Dated: December 19, 2022

Bryan P. Cenko and Jeffrey S. Grimson, Mowry & Grimson, PLLC, of Washington, D.C., argued for Plaintiffs JA Solar International Limited and JA Solar USA Inc.

Joshua E. Kurland, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice of Washington, D.C., argued for Defendant United States. With him on the brief were Brian M. Boynton, Principal Deputy Assistant Attorney General, Patricia M. McCarthy, Director, Reginald T. Blades, Jr., Assistant Director. Of counsel was Benjamin W. Juvelier, Attorney, U.S. Department of Commerce, Office of Chief Counsel for Trade Enforcement and Compliance of Washington, D.C.

Gordon, Judge: This action involves the U.S. Department of Commerce's ("Commerce") final results of the fifth administrative review of the antidumping ("AD") order on crystalline silicon photovoltaic products ("solar products") from Taiwan. See Certain Crystalline Silicon Photovoltaic Products from Taiwan, 86 Fed. Reg. 49,509 (Dep't of Commerce Sept. 3, 2021) (final results and partial rescission of AD review, and final determ. of no shipments) ("Final Results"), and the accompanying Issues and Decision Memorandum, A-583-853 (Aug. 27, 2021), available at

https://access.trade.gov/Resources/frn/summary/taiwan/2021-19052-1.pdf (last visited this date) ("Decision Memorandum").

Before the court is the USCIT Rule 56.2 motion for judgment on the agency record filed by Plaintiffs JA Solar International Limited and JA Solar USA Inc., (together, "JA Solar"). See Pls.' Mem. of Points and Auths. in Supp. of R. 56.2 Mot. for J. upon the Agency R., ECF No. 24[1] ("Pls.' Br."); see also Def.'s Resp. to Pls.' R. 56.2 Mot. for J. upon the Agency R., ECF No. 29 ("Def.'s Resp."); Reply Br. in Supp. of R. 56.2 Mot. for J. upon the Agency R., ECF No. 37 ("Pls.' Reply"). The court has jurisdiction pursuant to Section 516A(a)(2(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2018),[2] and 28 U.S.C. §1581(c). For the reasons set forth below, the court remands Commerce's Final Results.

### I. Standard of Review

The court sustains Commerce's "determinations, findings, or conclusions" unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). More specifically, when reviewing agency determinations, findings, or conclusions for substantial evidence, the court assesses whether the agency action is reasonable given the record as a whole. Nippon Steel Corp. v. United States, 458 F.3d 1345, 1350–51 (Fed. Cir. 2006); see also Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951) ("The substantiality of evidence must

---

[1] All citations to the parties' briefs and the agency record are to their confidential versions unless otherwise noted.
[2] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2018 edition.

take into account whatever in the record fairly detracts from its weight."). Substantial evidence has been described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." DuPont Teijin Films USA v. United States, 407 F.3d 1211, 1215 (Fed. Cir. 2005) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Substantial evidence has also been described as "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966).

Fundamentally, though, "substantial evidence" is best understood as a word formula connoting reasonableness review. 3 Charles H. Koch, Jr., Administrative Law and Practice § 9.24[1] (3d ed. 2022). Therefore, when addressing a substantial evidence issue raised by a party, the court analyzes whether the challenged agency action "was reasonable given the circumstances presented by the whole record." 8A West's Fed. Forms, National Courts § 3.6 (5th ed. 2022).

## II. Discussion

### A. Background

In an AD proceeding, Commerce determines the export price of the subject merchandise and assigns sales of that merchandise to the party who sets the export price for the purpose of calculating that party's AD margin. See Decision Memorandum at 8–9. Export price is defined as:

> the price at which the subject merchandise is first sold (or agreed to be sold) before the date of importation by the

> producer or exporter of the subject merchandise outside the United States to an unaffiliated purchaser in the United States or to an unaffiliated purchaser for exportation to the United States….

19 U.S.C § 1677a(a). In assigning sales to the proper party, the foreign producer or exporter, Commerce focuses on the term "first sold" in the statute, interpreting it as denoting the first party in the sales chain with knowledge of the merchandise's United States destination at the time of sale. Decision Memorandum at 8–9. This reflects Commerce's view that the party who first sells the subject merchandise destined for the United States is the likely "price discriminator," and thus the one who "may have engaged in dumping." Id.

To identify the price discriminator, Commerce uses a "knowledge test" in which it "considers both a seller's actual knowledge (knew) and [constructive]³ knowledge (should have known) of the final destination of the subject merchandise at the time of sale." Id. at 9. A demonstration of "actual" knowledge requires "an admission" by the foreign producer or exporter that it knew that the United States was the ultimate destination of the subject merchandise. See Pls.' Br. at 3 (quoting INA Walzlager Schaeffler KG v. United States, 21 CIT 110, 125, 957 F. Supp. 251, 265 (1997)); Def.'s Br. at 4 (citing same language). Alternatively, Commerce may determine that a foreign producer or exporter had "constructive" knowledge, i.e. that it should have known its goods were

---

³ The second prong of Commerce's knowledge test, which asks whether a respondent "should have known," is referred to by the parties as both "constructive" knowledge and "imputed" knowledge. See, e.g., Decision Memorandum at 6, 7 (using "constructive"); id. at 8, 11 (using "imputed"). For consistency and clarity, this opinion uses only the term "constructive knowledge."

Court No. 21-00514 Page 5

destined for the United States, and is to "diligently inquire into allegations of knowledge and render its conclusion based on all relevant facts and circumstances." See Pls.' Br. at 3 (emphasis added) (quoting Stupp Corp. v. United States, 43 CIT \_\_\_, \_\_\_, 359 F. Supp. 3d 1293, 1310 (2019)); Def.'s Resp. at 4 (citing same language). In determining the existence of knowledge, Commerce takes into consideration a variety of documentary evidence. See Decision Memorandum at 9 (explaining that, among other things, Commerce considers "whether the relevant party prepared or signed any certificates, shipping documents, contracts, or other such documents stating that the destination of the merchandise was the [United States, as well as,] whether the relevant party used any packaging or labeling stating that the merchandise was destined for the U.S. Additionally, in prior cases, Commerce examined whether any unique features, brands, or specifications of the merchandise indicated that the destination was the U.S.").

In the underlying administrative review, Commerce applied the knowledge test to identify the first sale of each component part of the subject solar products and include those sales in the margin calculation for the corresponding seller. The focus of the underlying dispute involves certain sales of crystalline silicon photovoltaic cells ("solar cells") from Inventec Solar Energy Corporation ("ISEC") to a subcontractor of JA Solar that were incorporated into solar products ultimately destined for the United States. See generally Decision Memorandum at Cmt. 2.[4] Commerce determined that JA Solar,

---

[4] The period of review ("POR") covers February 1, 2019, through January 31, 2020. Decision Memorandum at 5. ISEC's sales of solar cells "to a third country for the assembly of solar modules, which would subsequently be delivered by the customer to the U.S.," were negotiated in early 2019 and shipments began in July 2019 and continued through the POR. Id.

Court No. 21-00514                                                                                                    Page 6

not ISEC, was the first seller for purposes of calculating export price under § 1677a(a), and therefore, refused to include those sales in ISEC's margin calculation.  Id. at 12.

Commerce explained that because "solar cells are an intermediary product in the production of solar panels, [with] both cells and panels … covered by the scope of the order, the application of the knowledge test to cell manufacturers in Taiwan has been central to this proceeding since the investigation."  Id. at 9.  Commerce emphasized that it had previously excluded "a large portion of the reported sales" of mandatory respondents in its investigation "because of the lack of documentary evidence of knowledge at the time of sale."  Id. at 9–10.  Commerce also noted that in applying the knowledge test, "[s]worn statements made well after the time of the specific sales at issue were not relevant to the analysis of whether the [respondent] had reason to know at the time of the sale that specific sales of subject merchandise were destined for the U.S."  Id. at 10.  Commerce reiterated its "practice to 'give greater consideration to physical evidence and documentation prepared at the time of a transaction than to unsubstantiated statements or declarations that may be in the best interest of the investigated company sourcing those statements.'"  Id.

In reaching its final determination, Commerce highlighted the following key facts:

> ISEC and its customer communicated with each other via instant messaging, discussing the transactions, and specifically mentioning the U.S. destination.  Subsequently, ISEC and the customer began negotiations on a contract, and they exchanged several drafts.  A key issue in these negotiations was whether or not, with certainty, the destination of ISEC's solar cells would be the U.S. market.  At the end of the negotiations, the contract terms agreed upon by parties deliberately left ambiguous the ultimate destination of the merchandise, even though no other possible

Court No. 21-00514 Page 7

> destination was named. Although ISEC claims that this contract language is not meaningful, the negotiated language that ISEC officials required in the contract indicates that ISEC really did not know where the solar cells would ultimately go. Such knowledge is the essence of Commerce's knowledge test.

Decision Memorandum at 10 (footnotes omitted). Commerce rejected "additional evidence provided by ISEC," consisting of sworn statements of prior knowledge by ISEC employees because those statements "were made expressly to respond to our requests for information in this administrative review, are the same type of self-serving statements that we refused to consider as valid evidence of knowledge in the investigation of this proceeding, when such statements were presented to Commerce at verification by [another respondent]." Id. at 10–11 (concluding that "[t]he memories of employees, even as sworn statements, are not documentary evidence of knowledge of the destination").

Commerce then found that ISEC's "customer for these sales[, and not ISEC,] had 'first knowledge' of the U.S. destination, and [therefore] was the first company in the sales chain that 'first sold' the subject merchandise for exportation to the United States." Id. at 12. Accordingly, Commerce determined that it would continue "to exclude these sales in ISEC's final margin calculation." Id. JA Solar now challenges the "exclusion of these sales for purposes of calculating ISEC's final dumping margin []as not supported by substantial evidence because the only reasonable reading of the record as a whole, …, was that ISEC knew or had reason to know that its sales to JA Solar were destined for the United States." Pls.' Br. at 3–4.

Court No. 21-00514                                                                                                                                                Page 8

### B. Actual Knowledge

JA Solar argues that Commerce should have found that ISEC had actual knowledge of the fact that its solar cells were destined for the United States market. Specifically, JA Solar maintains that the sworn affidavits of ISEC and JA Solar employees, supported by the contemporaneous WeChat, text, and email exchanges between the two companies, constitute an admission of actual knowledge that should be "sufficient proof to satisfy [Commerce's] knowledge test." Pls.' Br. at 4 (citing Grain-Oriented Electrical Steel from the Czech Republic, 79 Fed. Reg. 58,324 (Dep't of Commerce Sept. 20, 2014)). Plaintiffs explain that, in "its initial response to Commerce's Section A questionnaire, ISEC set forth that it arranged with JA Solar to send its solar cells to JA Solar's subcontractor in [Country A][5] for further processing into modules prior to their shipment to the United States." Id. (citing Letter on Behalf of ISEC to Dep't of Commerce re: Section A Resp. at A-2, CR[6] 10–12 (July 16, 2020) ("ISEC Sec. A. Resp.")). Additionally, in response to Commerce's follow-up supplemental questionnaires, sworn statements from ISEC and JA Solar staff were placed on the record confirming "the underlying understanding between [ISEC and JA Solar] that ISEC's solar cells were ultimately destined for the United States." Id. at 7–12 (citing Letter on Behalf of ISEC to Dep't of Commerce re: Inventec's Supplemental Questionnaire Resp. at SA-4 to SA-6,

---

[5] The location and name of JA Solar's subcontractor are examples of business proprietary information that are not relevant to the underlying dispute. Accordingly, this opinion uses generic placeholders, such as "Country A," instead of revealing any confidential information.

[6] "PR" refers to a document contained in the public administrative record. See ECF No. 13-2. "CR" refers to a document contained in the confidential administrative record. See ECF No. 13-3.

PR 78 (Aug. 24, 2020) ("ISEC Supp. Sec. A. Resp.") (public version), and ISEC Second Supp. Sec. A. Resp. at 8–12, PR 92 (public version)).

Despite these admissions of actual knowledge by ISEC in its questionnaire responses and the corroborating sworn statements of ISEC and JA Solar's employees confirming that knowledge at the time of the underlying sales, Commerce determined that ISEC did not have actual knowledge that its merchandise was destined for the United States. See Decision Memorandum at 10, 12. Specifically, Commerce found that the negotiation of the final contract terms agreed upon between ISEC and JA Solar "deliberately left ambiguous the ultimate destination of the merchandise," and that the conscious decision to use ambiguous contract language indicated that "ISEC really did not know where the solar cells would ultimately go." Id. at 10 (concluding that "[s]uch knowledge is the essence of Commerce's knowledge test"). While Commerce does not specify the critical language changes that drove its finding, it appears clear from the record that Commerce was focused on a one-word change in the final contract language. Specifically, the record includes a draft contract that initially provided that ISEC's solar cells would be incorporated into modules that "shall be ultimately delivered to the United States," while the final contract language adopted in September 2019 stated that the solar cells "might be used" to make modules destined for the United States. See Pls.' Br. at 6–11, 6 n.1 (emphases added).

Plaintiffs maintain that Commerce's reliance on this change in contract language as a basis for finding that ISEC lacked actual knowledge is unreasonable. Plaintiffs

Court No. 21-00514                                                                           Page 10

provide a detailed timeline of the sales arrangement to support its position, which is reproduced below:

| Date | Event | Record Citation |
|---|---|---|
| March 2019 | JA Solar began to engage in discussions with ISEC concerning its intentions to purchase solar cells from ISEC that would be sent to [Country A] for further processing into modules prior to shipment to the United States. | Letter on Behalf of ISEC to Dep't of Commerce re: Inventec Sections A-D Supplemental Questionnaire Resp. at 9, CR 67 (Oct. 5, 2020) ("ISEC Second Supp. Sec. A. Resp.") |
| June 2019 | ISEC came to an agreement with JA Solar that "the United States was the final destination of the cells sold to JA Solar that were shipped to its designated subcontractor in [Country A]." | ISEC Second Supp. Sec. A Resp. at 8–9 |
| July 2019 | Based on this agreement, ISEC began to ship cells purchased by JA Solar to [Country A] to be assembled into modules by JA Solar's subcontractor prior to being shipped to the United States. | ISEC Second Supp. Sec. A Resp. at 9 |
| August 2019 | ISEC formalized its ongoing arrangement to ship its cells to [Country A] for further processing prior to being shipped to the United States in a written sales contract. | ISEC Second Supp. Sec. A Resp. at 9–10 |
| September 2019 | Following ongoing discussion to formalize ISEC shipping arrangement with JA Solar, the two parties finalized a new sales contract. | ISEC Second Supp. Sec. A Resp. at 9–10 |

Pls.' Br. at 5. At oral argument, the court confirmed the parties' understanding that there were shipments of subject merchandise made during the POR prior to the adoption of a final written contract in September 2019. See Oral Argument at 25:45–28:30, ECF No. 48 (Nov. 15, 2022) (Plaintiff arguing how Commerce erred in focusing only on sales that

occurred after finalization of the formal contract); id. at 1:07:25–1:08:36 (discussing how Commerce has obligation to diligently consider parties' course of conduct, including pre-contract sales); id. at 1:58:45–2:03:30 (discussing parties' course of conduct and understanding with respect to shipments pre-dating September 2019 final contract).

Plaintiffs emphasized that these sales pre-dating the signing of the final contract were made with the express understanding that JA Solar would eventually import the solar products into the United States. See Oral Arg. at 12:00–12:45 ("in July 2019 ISEC made its first shipment based on [the June 2019] understanding"); id. at 25:45–26:40 (arguing Commerce's knowledge analysis "focused on the wrong period of time," i.e. sales after September 2019 final contract rather than July 2019 commencement of informal shipping arrangement); id. at 2:01:00–2:01:40 (again confirming existence and inclusion of July 2019 shipments/sales in review); see also Pls.' Br. at 5, 11–12 (confirming shipping arrangement was informally agreed upon in June 2019 with shipments of solar cells commencing in July 2019 (citing ISEC Second Supp. Sec. A Resp.)). Given the totality of the record, the court cannot sustain as reasonable Commerce's determination that ISEC lacked actual knowledge as to the U.S. destination for the sales at issue, at least with respect to the sales that pre-date the adoption of the final contract language.

The Government has explained that Commerce sets a "high" standard in applying the knowledge test. See Def.'s Resp. at 4 (citing Certain In-Shell Raw Pistachios from Iran, 70 Fed. Reg. 7,470 (Dep't of Commerce Feb. 14, 2005) and accompanying IDM Cmt. 1). In applying this "high" standard, Commerce emphasizes the importance of

contemporaneous documentary evidence.  See, e.g., Decision Memorandum at 10, 11. With respect to ISEC's underlying sales that predate the adoption of the final sales contract, the contemporaneous evidence on the record appears to lead to one, and only one, reasonable conclusion, namely, that ISEC understood its solar cells to be destined for the United States.  In view of that, Commerce has failed to account for record evidence that detracts from its ultimate finding.  Therefore, remand is warranted.

Recognizing that ISEC appears to have had actual knowledge in July 2019 as to the U.S. destination for its sales of solar cells, the court observes that on remand Commerce may also need to reconsider the reasonableness of its inference that ISEC lacked knowledge after August 2019 due to the change in final contract language discussed above.  Additionally, as was noted at oral argument, the parties to the contract had agreed upon a price for the underlying sales early in their negotiations, and that price did not change even after the change to the final contract language relied on by Commerce for finding no knowledge.  See Oral Arg. at 27:45–28:30 (emphasizing how prices "did not change" after initial July 2019 shipments during final contract negotiations); id. at 1:34:00–1:37:00 (court inquiry and discussion about Commerce's failure to consider solar cell pricing in evaluating ISEC's knowledge).  While Commerce has explained that its knowledge test is designed to identify the "price discriminator," it is unclear why Commerce did not address the lack of any price change in the parties' negotiations in identifying the price discriminator.

Commerce's consideration of actual knowledge merits remand for an additional, separate reason.  In rejecting ISEC's claim of actual knowledge, Commerce reiterated its

finding from the underlying investigation that "[s]worn statements made well after the time of the specific sales at issue [are] not relevant to the analysis of whether the [respondent] had reason to know at the time of the sale that specific sales of subject merchandise were destined for the U.S." <u>Decision Memorandum</u> at 10 (describing Commerce's application of knowledge test during investigation and that "it was Commerce's practice to 'give greater consideration to physical evidence and documentation prepared at the time of a transaction than to unsubstantiated statements or declarations that may be in the best interest of the investigated company sourcing those statements.'" (citation omitted)). Applying those considerations from the investigation here, Commerce found that "[t]he additional evidence provided by ISEC, specifically the sworn statements of prior knowledge of employees that were made expressly to respond to our requests for information in this administrative review, are the same type of self-serving statements that we refused to consider as valid evidence of knowledge in the investigation of this proceeding, when such statements were presented to Commerce at verification by the respondent…." <u>Id.</u> at 10–11 (concluding that "[t]he memories of employees, even as sworn statements, are not documentary evidence of knowledge of the destination.").

At oral argument, the court inquired how it could sustain Commerce's application of the knowledge test as reasonable given that there was no dispute that "actual" knowledge could only be demonstrated by an "admission," and that here, Commerce would not accept ISEC's proffered admissions where such admissions were "self-serving." <u>See</u> Oral Arg. at 1:41:00–1:42:04. Beyond a vague suggestion that consideration of knowledge may be different where a respondent provides a "self-serving"

Court No. 21-00514                                                                                                          Page 14

admission, rather than in circumstances where the respondent is trying to avoid a finding of knowledge, the Government avoided the court's question.  Id. at 1:42:11–1:45:00 (Defendant arguing Commerce would accept "corroborated" self-serving admissions, while maintaining underlying record lacked corroboration); see also id. at 54:00–57:00 (distinguishing rejection of "self-serving" admissions from Commerce's acceptance of admissions of knowledge in other matters where admissions were against respondent's interest).  The Government also was non-responsive to the court's inquiry as to how ISEC, or other similarly situated future respondents, could demonstrate knowledge beyond what was put on the record here.  Id. at 1:15:50–1:21:00.  While it may potentially be reasonable for Commerce to apply the knowledge test differently in circumstances where a respondent's admission is "self-serving" than in circumstances where a respondent seeks to avoid a finding of knowledge, Commerce has not claimed to have done so.  Even if such a rationale could be discerned from Commerce's analysis (which it cannot), Commerce has not explained how such a discriminating standard could be reasonably applied, much less how it was applied in the underlying review.

       The court has acknowledged and previously affirmed Commerce's practice of attaching "more weight to documentary evidence than to [non-contemporaneous] statements such as declarations;" however, the context and the record indicate that Commerce's application of that practice in this matter is unreasonable.  Cf. Durum Gida Sanye Ve Ticaret A.S. v. United States, 42 CIT ___, ___, 311 F. Supp. 3d 1367, 1371–72 (2018) (highlighting credibility issues in respondent's declaration of lack of knowledge, as well as the lack of any supporting contemporaneous documentary evidence, in affirming

Commerce's knowledge determination). Here, ISEC and JA Solar provided consistent responses claiming actual knowledge in answering Commerce's questionnaires. See Pls.' Br at 4–11, 14–20. Plaintiffs supported those responses with sworn statements of employees who would have had knowledge at the time of the underlying sales. See id.; see also Pls.' Reply at 1–3. Under the undisputed standard that a finding of actual knowledge requires an "admission" by the respondent, Commerce's refusal to afford any weight to ISEC's "self-serving" admission in the underlying proceeding tests the bounds of reasonableness for Commerce's stated practice and cannot be sustained. Accordingly, the court remands Commerce's determination that ISEC lacked knowledge as to the U.S. destination for the sales at issue.

### C. Constructive Knowledge

JA Solar also argues that even if ISEC did not demonstrate that it had actual knowledge that the United States was the ultimate destination for the subject sales, it was nevertheless unreasonable for Commerce to find that ISEC lacked even constructive knowledge of that fact based on the totality of the record. Pls.' Br. at 14, 23–28. In the absence of such an admission, or actual knowledge, Commerce must "look to other evidence to determine whether a [respondent] should have known that the goods were not for home consumption." Id. at 3 (quoting, with emphasis, INA Walzlager, 21 CIT at 125, 957 F. Supp. at 265). In applying the knowledge test and evaluating constructive knowledge, Commerce "must diligently inquire into allegations of knowledge and render its conclusion based on all relevant facts and circumstances." Stupp Corp., 43 CIT at ___, 359 F. Supp. 3d at 1310.

It appears that Commerce collapsed its determination that ISEC lacked both actual and constructive knowledge, despite the different standards applicable to each. See Decision Memorandum at 10–12 (finding generally that "essential facts…do not support ISEC's contention that it actually knew, or should have known, that the U.S. was the ultimate destination of the merchandise at issue, at the time of sale or prior to it."). Plaintiffs contend that Commerce's determination failed to take account of: contemporaneous WeChat, text, and email exchanges between ISEC and JA Solar employees discussing the sales arrangement, including the draft and final language of the sales contract; sworn statements of employees involved in the underlying transactions affirming that ISEC had knowledge of the U.S. destination for the solar products; evidence of the parties' bilateral understanding of a business arrangement to create a "closed-loop" shipping channel (i.e., ISEC's sales of solar cells to JA Solar's subcontractor in Country A were all destined for sale in the United States after processing into solar modules); and, evidence corroborating that all sales of solar cells by ISEC to JA Solar through the aforementioned "closed-loop" shipping channel did ultimately enter the United States. Pls.' Br. at 4, 8–27; Pls.' Reply at 4–5. Given this failure to take into account evidence detracting from its conclusion, including contemporaneous documentary evidence to which Commerce claims to afford the most weight, Plaintiffs insist that Commerce's resulting finding that ISEC lacked constructive knowledge cannot be sustained as reasonable. Pls.' Br. at 23–27 (citing Nippon Steel, 458 F.3d at 1351).

In light of the discussion above and the conclusion that remand is necessary for Commerce to reconsider its evaluation of actual knowledge, the court need not reach

JA Solar's alternative arguments regarding constructive knowledge. However, if on remand Commerce continues to find that ISEC lacked actual knowledge as to any of the sales at issue, it will then need to address whether the record demonstrates that ISEC had reason to know that the United States was the ultimate destination for the subject merchandise. In so doing, the court encourages Commerce to explain its findings as to constructive knowledge in light of the court's guidance in this opinion, as well as the court's discussions with the parties on the standard for constructive knowledge at oral argument. See, e.g., Oral Arg. at 47:00–52:00 (discussing differentiation in degree of certainty in actual knowledge vs. "reason to know" with Defendant's counsel); id. at 1:07:25–1:13:15 (discussing Commerce's obligation to consider entirety of record, including context of parties' pre-contract course of conduct); id. at 1:53:45–1:56:05 (discussing degrees of certainty with Plaintiff's counsel).

### III. Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that Commerce's determination to exclude certain sales of solar cells from ISEC's final margin calculation, due to its finding that ISEC lacked actual or constructive knowledge that the subject merchandise would ultimately enter the United States, is remanded to Commerce for further explanation, and if appropriate, reconsideration; it is further

**ORDERED** that Commerce shall file its remand results on or before March 2, 2023; and it is further

Court No. 21-00514 Page 18

**ORDERED** that, if applicable, the parties shall file a proposed scheduling order with page limits for comments on the remand results no later than seven days after Commerce files its remand results with the court.

                                              /s/ Leo M. Gordon
                                          Judge Leo M. Gordon

Dated: December 19, 2022
       New York, New York