A-583-853<br>
Remand<br>
Slip Op. 22-146<br>
POR: 02/01/2019 – 1/31/2020<br>
<strong>Public Version</strong><br>
E&C/OIV: TEM

*JA Solar International Limited and JA Solar USA Inc. v. United States*,
Court No. 21-00514, Slip Op. 22-146 (CIT December 19, 2022)
**Crystalline Silicon Photovoltaic Products from Taiwan**

**FINAL RESULTS OF REDETERMINATION
PURSUANT TO COURT REMAND**

**I.  SUMMARY**

The U.S. Department of Commerce (Commerce) prepared these final results of redetermination on remand pursuant to the opinion and remand order from the U.S. Court of International Trade (CIT or the Court) in *JA Solar International Limited and JA Solar USA Inc. v. United States*, Court No. 21-00514, Slip Op. 22-146 (CIT December 19, 2022) (*Remand Order*).  This remand concerns the final results of the 2019-2020 antidumping duty (AD) administrative review of the AD order on crystalline silicon photovoltaic products (solar products) from Taiwan.[1]

In its *Remand Order*, the CIT held that Commerce: (1) made an unreasonable determination that the mandatory respondent, Inventec Solar Energy Corporation (ISEC), lacked actual knowledge of the U.S. destination of certain sales, based on the parties' change to the final contract language in light of record evidence suggesting that before the adoption of the final contract, sales were made with an express understanding that the final destination was the United

---

[1] *See Certain Crystalline Silicon Photovoltaic Products from Taiwan: Final Results of Antidumping Duty Administrative Review; Partial Rescission of Antidumping Duty Administrative Review; Final Determination of No Shipments; 2019-2020*, 86 FR 49509 (September 3, 2021) (*Final Results*), and accompanying Issues and Decision Memorandum (IDM).

States;[2] (2) may need to reconsider, on remand, the reasonableness of its inference that ISEC lacked actual knowledge of the U.S. destination at the adoption of the final contract because the contract price did not change;[3] and (3) must address, on remand, whether ISEC had reason to know of the U.S. destination (*i.e.,* "constructive knowledge") should it continue to find lack of actual knowledge for any of the sales at issue.[4] The CIT remanded Commerce's determination in the *Final Results* to exclude the sales of solar cells at issue from ISEC's final margin calculation, due to its finding that ISEC lacked actual or constructive knowledge that the subject merchandise would ultimately enter the United States.

In accordance with the *Remand Order*, in these final results of redetermination, Commerce reconsidered the facts on the record and has addressed the parties' comments. For the reasons explained below, Commerce finds that, while ISEC lacked actual knowledge of the ultimate U.S. destination of the solar cells that it sold to JA Solar International Limited and JA Solar USA Inc., (together, JA Solar) pursuant to the final contract, ISEC did have constructive knowledge that its solar cells were destined for the United States due to JA Solar's repeated, clear, and consistent communication with ISEC regarding their ultimate destination (*i.e.*, the United States). Accordingly, Commerce finds that ISEC possessed knowledge as to the U.S. destination for the sales at issue. As a result, we have: (1) included ISEC's sales to JA Solar in our analysis of ISEC's U.S. sales; (2) recalculated ISEC's weighted-average dumping margin for the 2019-2020 review period; and (3) calculated an assessment rate applicable to solar products imports by JA Solar into the United States produced by ISEC. After considering the parties' comments, we have provided further clarification to our analysis in the draft remand

---

[2] *See Remand Order* at 15.
[3] *Id*. at 16.
[4] *Id*. at 23.

redetermination regarding how Commerce intends to assess duties on solar products imports by JA Solar into the United States produced by ISEC, should Commerce amend the *Final Results* pursuant to this redetermination.[5]

## II.     BACKGROUND

On September 3, 2021, Commerce published the final results of the AD administrative review on solar products from Taiwan, covering the period February 1, 2019, through January 31, 2020.[6]  The administrative review covered 29 producers/exporters of subject merchandise.[7] Commerce selected ISEC as a mandatory respondent.[8]

ISEC reported that it sold solar cells to JA Solar, which JA Solar arranged to have incorporated into solar panels in [           ] before exporting them to the United States.[9]  In the *Preliminary Results*, Commerce found that ISEC "expressed uncertainty regarding the ultimate destination of the merchandise at the time of the sales at issue, despite the information that it received from {JA Solar} regarding the intended destination."[10]  Accordingly, we attributed these U.S. sales to JA Solar and did not include these sales in ISEC's margin calculation.[11]

In their administrative case briefs, ISEC and JA Solar challenged Commerce's determination that ISEC lacked knowledge at the time of sale that the solar cells it sold to JA Solar were destined for the United States.[12]  However, in the *Final Results*, based upon the

---

[5] *See* Draft Results of Redetermination Pursuant to Court Order, *JA Solar International Limited and JA Solar USA Inc. v. United States*, Court No. 21-00514, Slip Op. 22-146 (CIT December 19, 2022), dated February 2, 2023 (Draft Remand).
[6] *See Final Results*, 86 FR at 49511.
[7] *Id.*
[8] *See Final Results* IDM at 2 (stating that the ISEC/E-TON entity was selected as one of two mandatory respondents in the review).
[9] *See Final Results* IDM at 9-11.
[10] *See Certain Crystalline Silicon Photovoltaic Products from Taiwan:  Preliminary Results; Preliminary Intent To Rescind and Partial Rescission of Antidumping Duty Administrative Review; and Preliminary Determination of No Shipments; 2019-2020,* 86 FR 22630 (April 29, 2021), and accompanying Preliminary Decision Memorandum at 14.
[11] *Id.*
[12] *See Final Results* IDM at Comment 2.

parties' comments and our examination of the evidence on the record, we continued to find that the facts supported that JA Solar had "first knowledge" of the U.S. destination, and was the first company in the sales chain that "first sold" the subject merchandise for exportation to the United States within the meaning of section 772(a) of the Tariff Act of 1930, as amended (the Act).[13]

JA Solar challenged Commerce's finding at the CIT.[14] On December, 19, 2022, the CIT held as unreasonable Commerce's determination that ISEC lacked actual knowledge as to the U.S. destination for the sales at issue, at least with respect to the sales which pre-dated the adoption of the final contract language,[15] finding that ISEC appears to have had actual knowledge prior to the adoption of the final contract language and the price did not change. The Court further held that Commerce may need to reconsider the reasonableness of its inference that ISEC lacked knowledge of the U.S. destination based on a final September 2019 contract.[16] Thus, the CIT remanded Commerce's final results with respect to its application of the "knowledge test" for further explanation and, if appropriate, reconsideration.[17]

### III.   LEGAL FRAMEWORK

Pursuant to section 772(a) the Act, Commerce considers export price to be the "price at which the subject merchandise is first sold (or agreed to be sold) {…} outside of the United States to an unaffiliated purchaser in the United States or to an unaffiliated purchaser for exportation to the United States ... {.}" The term "first sold" means that export price is based on the first sale by a party in the sales chain with knowledge of the U.S. destination, because that

---

[13] *Id.*
[14] *See JA Solar International Limited and JA Solar USA Inc. v. United States*, Court No. 21-00514, ECF Nos. 6, 7 and 24, 25.
[15] *See Remand Order* at 15-16.
[16] *Id.* at 16-17.
[17] *Id.* at 24.

party is the "price discriminator" that engaged in dumping.[18]  To identify this first sale, Commerce applies a rule that it calls "the knowledge test" to determine which party in the supply chain knew or should have known that the subject merchandise was destined for the United States.[19]  In cases where the foreign producer knows or has reason to know that the merchandise is ultimately destined for the United States, the producer's sale is usually the sale subject to investigation or review.  If, on the other hand, the producer sold the merchandise to another company, for example a trading company, without knowledge of the trading company's intention to export the merchandise to the United States, then the trading company's first sale to an unaffiliated person is the sale subject to investigation or review.  In evaluating the knowledge test, Commerce considers both a seller's actual knowledge of the final destination of the subject merchandise at the time of sale, and whether to impute such knowledge, *i.e.*, whether the facts on the record indicate that the seller should have known of the final destination.[20]  A general knowledge or belief on the part of the first party in the supply chain that the next party generally sells some products to the United States would not meet this standard.[21]  A producer's speculation that the goods might ultimately have been destined for export to the United States is also insufficient for a knowledge determination.[22]  Commerce's standard for the knowledge test is to consider documentary or physical evidence that the producer knew, or should have known,

---

[18] *See Antidumping & Countervailing Duty Proceedings:  Assessment of Antidumping Duties (Reseller Policy)*, 68 FR 23954, 23957 (May 6, 2003).
[19] *See Certain New Pneumatic Off-the-Road Tires from the People's Republic of China:  Final Results of Antidumping Duty Administrative Review; 2014-2015,* 82 FR 18733 (April 21, 2017), and accompanying IDM at 17.
[20] *See Grain-Oriented Electrical Steel from the Czech Republic:  Final Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances*, 79 FR 58324 (September 29, 2014), and accompanying IDM at Comment 2.
[21] *See Final Results of Antidumping Duty Administrative Review:  Certain In-Shell Raw Pistachios from Iran,* 70 FR 7470 (February 14, 2005) (*Pistachios from Iran*), and accompanying IDM at Comment 1; *see also Final Determination of Sales at Not Less Than Fair Value:  Pure Magnesium from the Russian Federation*, 66 FR 49347 (September 27, 2001), and accompanying IDM at Comment 3.
[22] *See Pistachios from Iran* IDM at Comment 1.

its goods were destined for the United States because this type of evidence is more probative, reliable, and verifiable than statements or declarations.[23]

## IV.   ANALYSIS

In compliance with the Court's *Remand Order*, Commerce reconsidered record evidence regarding the application of the "knowledge test" to determine which party was the first party with knowledge of the U.S. destination of the solar cells at issue, consistent with the Court's opinion.  As a result, based on the analysis below, Commerce has revised its finding in the *Final Results* and now determines, after reconsideration, that ISEC had knowledge of the U.S. destination of the solar cells it sold to JA Solar.

The Court held in its *Remand Order*, "{w}ith respect to ISEC's underlying sales that predate the adoption of the final sales contract, the contemporaneous evidence on the record appears to lead to one, and only one, reasonable conclusion, namely, that ISEC understood its solar cells to be destined for the United States."[24]  While ISEC expressed uncertainty regarding the ultimate destination of the merchandise sold to JA Solar at the adoption of the final contract, as indicated by ISEC's negotiation for certain contract language that was ultimately adopted into the final contract in September 2019, we find that ISEC had reason to know, or should have known, of the ultimate U.S. destination of such solar cells, based on its previous communications with JA Solar, the fact that solar cells sold pursuant to the parties' agreement were shipped to the United States before the adoption of the final contract language, and that the sales price did not change pursuant to the adoption of the final contract.  Therefore, although ISEC may have lacked

---

[23] *See Certain Circular Welded Non-Alloy Steel Pipe from Mexico:  Final Results of Antidumping Duty Administrative Review*, 76 FR 36086 (June 21, 2011), and accompanying IDM at 5; *see also Durum Gida Sanyi Ve Ticaret A.S. v. United States,* 311 F. Supp. 3d 1367, 1372 (CIT 2018) (holding as reasonable Commerce's findings regarding the credibility and contemporaneity of a general manager's affidavit).
[24] *See Remand Order* at 15-16.

actual knowledge of the U.S. destination of certain of its sales to JA Solar, as described below, upon reconsideration of the record evidence and in light of the Court's opinion, we find that ISEC had constructive knowledge of the ultimate U.S. destination for the sales at issue.

In its questionnaire responses, ISEC provided an account of the events associated with these sales:

- In [     ], ISEC contacted JA Solar via instant messaging, asking [

    ]. In response, JA Solar said [  ] and followed up by asking ISEC [



    ]. In response to this, ISEC stated [



    ][25]

- In [     ], JA Solar contacted ISEC regarding purchases of solar cells. JA Solar told ISEC that the solar cells would be sent to a subcontractor in [     ] for module assembly prior to their ultimate delivery in the United States. Based on this conversation, in [     ], ISEC manufactured certain solar cells, and shipped them to the subcontractor in [     ].[26]

- In [     ], JA Solar sent ISEC a purchase order document titled [

    ].[27] Among the terms of this document, JA Solar included a provision that stated [

---

[25] *See* ISEC's Letter, "Inventec's Supplemental Questionnaire Response," dated August 24, 2020 (ISEC August 24, 2020 SAQR) at Exhibit SA-ISEC-5 (providing "WeChat" messages).
[26] *See* ISEC August 24, 2020 SAQR at SA-5.
[27] *Id.* at Exhibit SA-ISEC-5.

]. Upon receiving the purchase order, ISEC sent an email[28] to JA Solar requesting an edit to the purchase contract, stating [

] and asked to modify its provisions to state [

].[29]

- Approximately a week later, in September 2019, JA Solar provided a response to ISEC's proposed revision, and ISEC followed up with an email which stated: [

].[30] JA Solar responded with a revised purchase contract that included ISEC's revised provision. In full, the final provision agreed on by both parties read as follows: [

---

[28] *Id.* (providing emails between [                                      ]).
[29] At about the same time as this email exchange, ISEC and JA Solar had a conversation via instant messaging which paralleled the concurrent email exchange: ISEC messaged JA Solar stating [

] In response, JA Solar asked [
              ] to which ISEC responded [
                                    ]. *See* ISEC August 24, 2020 SAQR at Exhibit SA-ISEC-5 (providing "WeChat" messages).
[30] *See* ISEC August 24, 2020 SAQR at Exhibit SA-ISEC-5 (providing emails between [
       ]).

].³¹ It was with this language that ISEC made sales of solar cells to JA Solar during the next five months of the review period.³²

In the *Remand Order*, the Court stated that, "{g}iven the totality of the record, the court cannot sustain as reasonable Commerce's determination that ISEC lacked actual knowledge as to the U.S. destination for the sales at issue, at least with respect to the sales that pre-date the adoption of the final contract language."³³ As outlined above, JA Solar communicated with ISEC regarding the U.S. destination of the solar cells.

The Court stated in the *Remand Order* that ISEC appeared to have actual knowledge of the U.S. destination in [         ] with respect to sales to JA Solar made that month, following informal communication that did not include any contract or purchase agreement, in draft form or otherwise. Record evidence clearly indicates that JA Solar informed ISEC during the negotiations that the solar cells at issue were destined for the United States. Nonetheless, Commerce's determination in the *Final Results* was based on ISEC's reaction to this information. As noted above, in September 2019, ISEC set forth a contractual requirement that

[

].³⁴ Additionally, ISEC negotiated final contract language which removed language that sales "shall" be delivered to the United States and replaced it with "might." ³⁵ In the *Final Results*, Commerce understood

---

³¹ *See* ISEC August 24, 2020 SAQR at Exhibit SA-ISEC-5 (providing final August purchasing contract).
³² *See, e.g.* ISEC's Letter, "Section A Response," dated July 16, 2020, at Exhibit A-2 (October 2019 Purchasing Contract).
³³ *See Remand Order* at 15.
³⁴ *See* ISEC August 24, 2020 SAQR at Exhibit SA-ISEC-5 (providing final August purchasing contract).
³⁵ *Id.* (providing emails between [                                    ]).

9

this record evidence to demonstrate that ISEC had doubts about the ultimate destination of the solar cells.[36] Although the record contains non-contemporaneous admissions of knowledge by the respondent,[37] the contemporaneous record evidence in this administrative review indicating an expression of doubt from the respondent regarding the ultimate destination of the sales at issue detracts from a finding of actual knowledge. Based on this record evidence and in light of the Court's opinion, we find that for sales made pursuant to the negotiated final contract adopted by parties in September 2019, ISEC may have lacked certainty about the ultimate U.S. destination.

Absent certainty, Commerce must look to record evidence to determine whether the respondent should have known of the ultimate U.S. destination. To evaluate constructive knowledge, Commerce must "diligently inquire into allegations of knowledge and render its conclusion based on all relevant facts and circumstances."[38] The concept of imputed or constructive knowledge implies that the information regarding knowledge must be derived from extrinsic sources.[39] Short of an actual contract, Commerce considers, for example, whether the relevant party used any packaging or labeling stating that the merchandise was destined for the United States[40] or whether any unique features, brands, or specifications of the merchandise indicated that the destination of merchandise was the United States.[41] The actions and intentions

---

[36] *See Final Results* IDM at 11-12.
[37] *See INA Walzlager Schaeffler KG*, 957 F. Supp. 251, 265 (CIT 1997) (*INA Walzlager*) ("The only way to determine actual knowledge is through an admission of the respondent.").
[38] *See Remand Order* at 21 ((citing *INA Walzlager*, 957 F. Supp. 251 at 265, quoting *Stupp Corp. v. United States*, 359 F. Supp. 3d 1293, 1310 (CIT 2019)).
[39] *Id.*
[40] *See Certain Pasta from Italy: Termination of New Shipper Antidumping Duty Administrative Review*, 62 FR 66602 (December 19, 1997).
[41] *See, e.g., GSA, S.R.L. v. United States,* 77 F. Supp. 2d 1349 (CIT 1999) (upholding Commerce's finding that Company A knew the merchandise at issue was destined for the United States because Company A prepared a P-1 certificate that was required for U.S. entry and stated it was "For Certificate IPR Exports of Pasta to the USA"; Company A manufactured the labeling and packaging for the merchandise with the imprint: "Imported by Racconto, Melrose Park, IL 60160;" different package sizes were used for sales to the United States versus sales to Europe; and different brands were sold in the United States from those sold in Canada).

of the customer are also relevant, and should also be considered in making a determination of whether to impute knowledge to the producer.[42]  A customer's statements to a producer are not necessarily determinative of a producer's constructive knowledge, but such statements must be considered among other evidence.[43]

As noted by the Court, since ISEC and JA Solar had agreed to a price early in the negotiations, and that price did not change after the change to the final contract language (*i.e.*, language indicating that the solar cells "might" be exported to the United States, rather than "shall"), the price discriminator did not change and remained consistent throughout the negotiations.[44]  As noted above, in this instance, JA Solar's statements of intent to ISEC regarding the solar cells at issue were consistent on where the ultimate destination would be after the completion of solar module assembly in [     ].  All the information that JA Solar provided to ISEC constitutes an indication to ISEC that ISEC's solar cells were destined for the U.S. market.  On the other hand, there is very little information on the record to explain ISEC's apparent reluctance to accept this information.  However, an understanding of ISEC's underlying motivation for requesting the change to the contract provisions is not necessary for this analysis.  The sworn statements that ISEC submitted to Commerce in response to the questionnaires Commerce issued during the administrative review also support a determination that ISEC had reason to know, based on JA Solar's statements, that the modules manufactured in [     ] with the solar cells at issue would ultimately be exported to the United States.[45]  Upon

---

[42] *See, e.g., Hiep Thanh Seafood Joint Stock Co. v. United States,* 781 F. Supp. 2d 1366, 1373 (CIT 2011) (stating that Commerce cannot reasonably identify the "price discriminator" if the actions and intent of the customer are removed from consideration).
[43] *See Hyundai Electronics Industries Co., Ltd. v. U.S.*, 342 F. Supp. 2d 1141, 1147-8 (CIT 2004) (holding that a customer's statements regarding other possible destinations did not overcome the producer's assertion of knowledge of the ultimate U.S. destination).
[44] *See Remand Order* at 16-17.
[45] *See* ISEC August 24, 2020 SAQR at Exhibit SA-ISEC-5 (Affidavit of Dino Yang of ISEC).

redetermination, we find that the evidence on the record supports the conclusion that ISEC was the price discriminator during the period of review (POR) because ISEC should have known or had reason to know (*i.e.*, had constructive knowledge) of the U.S. destination during this time.

Therefore, pursuant to these final results of redetermination, we have done the following: (1) included ISEC's sales to JA Solar in our analysis of ISEC's U.S. sales; (2) recalculated ISEC's cash deposit rate; and (3) assigned an importer-specific assessment rate to JA Solar based upon ISEC's information. For a complete description of the recalculations performed, *see* the ISEC Draft Remand Calculation Memorandum.[46]

## IV.   INTERESTED PARTY COMMENTS

On February 2, 2023, we released our draft remand redetermination to interested parties.[47] On February 9, 2023, we received comments from JA Solar.[48] JA Solar concurred with Commerce's knowledge finding, commenting that Commerce's draft remand redetermination complies with the Court's remand order,[49] but offered additional comments regarding how Commerce should implement its liquidation instructions to U.S. Customs and Border Protection (CBP), should Commerce amend the *Final Results* pursuant to this redetermination.[50]

**Comment:   Commerce Must Draft its Customs Instructions to be Consistent with its Knowledge Finding**

*JA Solar's Comments*
- Commerce has complied with the Court's remand order and found that ISEC had knowledge that solar cells it sold to JA Solar were destined for the United States. In the final redetermination, Commerce must continue to find this outcome.

---

[46] *See* Memorandum, "Draft Remand Redetermination Sales Calculations for Inventec Solar Energy Corporation," dated February 2, 2023 (ISEC Draft Remand Calculation Memorandum).
[47] *See* Draft Remand.
[48] *See* JA Solar's Letter, "Comments on Draft Remand Redetermination," dated February 9, 2023.
[49] *Id.* at 2.
[50] *Id.* at 3.

- JA Solar requested draft customs liquidation instructions, but Commerce declined to release them.
- Commerce should insert language in liquidation instructions to CBP to avoid further delay in properly assessing final antidumping duties according to Commerce's amended final results:
    - Importer or customer: [


                                                    ]
        Final rate: [     ] %
- It would be prudent for Commerce to be explicit in its instructions to CBP to avoid the need for any additional administrative action or for the Court to have to reopen the appeal to ensure that JA Solar's entries liquidate in accordance with the Court's judgment.

**Commerce's Position:**

First, we agree with JA Solar and we continue to find that ISEC had knowledge that the solar cells it sold to JA Solar were destined for the United States. Second, as to JA Solar's comments regarding the draft customs instructions, Commerce released the draft remand redetermination for comment without draft customs instructions or an indication that it should release draft instructions with the draft remand for comment given the Court's order remanding Commerce's application of the knowledge test. Nonetheless, we have now placed on the record of this remand draft instructions that Commerce intends to issue to CBP should the Court sustain this final remand redetermination.[51] Third, we agree with JA Solar that, should Commerce amend the *Final Results* in accordance with this remand redetermination, Commerce must notify CBP that the importer-specific rate calculated pursuant to the amended final results applies to

[



                                                                                                            ]

---

[51] *See* Memorandum, "Draft Customs Instructions," dated concurrently with these final results of redetermination.

Finally, we agree with JA Solar's above statement and find it to be in accordance with Commerce's remand redetermination.

## V.     FINAL RESULTS OF REDETERMINATION

Per the Court's *Remand Order*, we find found that ISEC had knowledge that the solar cells that it sold to JA Solar during the POR were ultimately destined for the U.S. market.  As a result of our redetermination, the estimated weighted-average dumping margin for ISEC is 7.42 percent.  Upon a final and conclusive decision in this case, Commerce will instruct CBP to liquidate appropriate entries for the applicable time period consistent with this final remand redetermination.[52]

3/2/2023

X 

Signed by: LISA WANG

Lisa W. Wang
Assistant Secretary
  for Enforcement and Compliance

---

[52] *Id.*